IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | | |
| Plaintiff, | | |
| v. | | CRIM. NO. 21-152 (SCC) |
| JOSÉ M. CEBALLO [1], AND JUAN J. LANTIGUA-NUÑEZ [3], | | |
| Defendants. | | |

**OPINION AND ORDER**

Mr. Ceballo and Mr. Lantigua-Nuñez have moved to dismiss the Indictment on the ground that the government lacks jurisdiction under the Maritime Drug Law Enforcement Act (MDLEA) to prosecute them. Docket Nos. 96, 100. The U.S. Coast Guard intercepted their vessel about 88 nautical miles north of Aguadilla, Puerto Rico. Docket No. 1-1, pg. 2.[1] The vessel displayed no indicia of nationality. *Id.* Two of the three people onboard orally claimed Dominican Republic nationality for the vessel and for themselves. *Id.* at 3. The Dominican Republic could neither confirm nor deny the

---

1. Mr. Ceballo accepts as true the allegations in the complaint affidavit for purposes of his motion to dismiss. Docket No. 100, pg. 2 n.1. Mr. Lantigua-Nuñez appears to have done so as well. *See* Docket No. 96, pgs. 1–2.

vessel's registry or nationality. Docket No. 100-1, pg. 2. The U.S. Coast Guard then deemed the vessel one without nationality, enforced U.S. law, and recovered 18 bales (about 350 kilograms' worth) of a substance that tested positive for cocaine. Docket No. 1-1, pg. 3. The government charged the vessel's occupants with conspiring to possess with intent to distribute a controlled substance aboard a vessel subject to U.S. jurisdiction, the substantive offense, conspiring to import a controlled substance, jettisoning a controlled substance from a vessel subject to U.S. jurisdiction, and failing to heave. Docket No. 27.

Then the First Circuit published *United States v. Dávila-Reyes*, 23 F.4th 153 (1st Cir. 2022). *Dávila-Reyes* held that Congress's authority to define and punish felonies committed on the high seas is constrained by international law. *Id.* at 183. Under international law, at least where there are no circumstances giving reason to doubt the vessel's claim, a vessel that makes an oral claim of nationality is considered a vessel *with* nationality. *Id.* at 194–95. But the MDLEA considers a vessel whose master makes an oral claim of

registry, which the claimed flag state does not confirm, a vessel *without* nationality. 46 U.S.C. § 70502(d)(1)(C). Since registry and nationality mean the same thing, 23 F.4th at 169, § 70502(d)(1)(C) is inconsistent with international law. Thus, Congress exceeded its authority under the Define and Punish Clause by enacting § 70502(d)(1)(C). *Id.* at 195. But *Dávila-Reyes* is no longer the law of this circuit. The First Circuit withdrew it when it granted rehearing *en banc*. *United States v. Reyes-Valdivia*, 38 F.4th 288, 288 (1st Cir. 2022). The *en banc* opinion has not yet been issued. So although we write in the shadow of *Dávila-Reyes*, it has no weight here.

After *Dávila-Reyes*, the government reached out to the Dominican Republic again and asked if it could confirm or deny that the vessel is registered there. The Dominican Republic responded that the vessel is not registered there and does not have its nationality. Docket No. 100-2, pg. 3.

## I.

The defendants' motions to dismiss hinge on whether their vessel is subject to U.S. jurisdiction. Jurisdiction, in this context, refers to the MDLEA's substantive reach, not our

subject-matter jurisdiction. *United States v. González*, 311 F.3d 440, 443 (1st Cir. 2002). The government bears the burden of proving by a preponderance of the evidence that the defendants' vessel falls within the MDLEA's reach.[2] *United States v. Matos-Luchi*, 627 F.3d 1, 5 (1st Cir. 2010).

## A.

Mr. Ceballo's first line of attack is that the defendants' vessel does not fall within the MDLEA's substantive reach because it does not fit within any of the MDLEA's enumerated jurisdictional bases. The MDLEA criminalizes certain conduct aboard "covered vessel[s]." § 70503(a)(1). "[C]overed vessel[s]," as relevant here, are those "subject to the jurisdiction of the United States," § 70503(e)(1), which includes "vessel[s] without nationality," § 70502(c)(1)(A). The MDLEA lists three types of "vessel without nationality": those where the master (A) makes a claim of registry that the claimed flag state denies, (B) fails to make a claim of

---

2. At some point we need to determine whether there is U.S. jurisdiction over the defendants' vessel, in accordance with 46 U.S.C. § 70504(a). Because their motions seek to dismiss the Indictment on jurisdictional grounds, we will make that determination at this time.

nationality or registry upon request, and (C) makes a claim of registry that the claimed flag state does not confirm. §§ 70502(d)(1)(A)–(C). But this list is not exhaustive. *Matos-Luchi*, 627 F.3d at 4. "At the very least," under § 70502(d), vessels without nationality include those "that could be considered stateless under customary international law." *Id.* For shorthand, we will call this § 70502(d)'s residual category.

Mr. Ceballo argues that, by the MDLEA's terms, §§ 70502(d)(1)(A) and (C) do not apply here because the vessel made a claim of *nationality*, not *registry*. Although, as a matter of formal usage, registry and nationality are different, the First Circuit has interpreted §§ 70502(d)(1)(A) and (C) as covering claims of nationality. To be sure, those subsections apply where a vessel makes a claim of registry. But the First Circuit has said that they also apply to a vessel "for which a claim of nationality is made but rejected or not backed up by the nation invoked." *Matos-Luchi*, 627 F.3d at 6.

It makes sense to treat registry and nationality as synonyms. Under international law, each nation determines "the conditions on which it will grant its nationality to a

[vessel], thereby accepting responsibility for it and acquiring authority over it." *Lauritzen v. Larsen*, 345 U.S. 571, 584 (1953). Registry is how the nation keeps track of the vessels to which it has granted its nationality. *See* HERMAN MEYERS, THE NATIONALITY OF SHIPS 129–30 (1967). But not all nations register small vessels. *United States v. Trinidad*, 839 F.3d 112, 123 (1st Cir. 2016) (Torruella, J., dissenting). So, as a technical matter, nationality is broader than registry. As a practical matter, however, nationality and registry occur in tandem on the high seas. Thus, international law sources often use them interchangeably. MEYERS, *supra*, at 28. It looks like the MDLEA does, too. For example, a vessel can make a "claim of nationality or registry" by "flying its nation's ensign or flag" or producing "documents that evidenc[e] the vessel's nationality." § 70502(e). Neither of those necessarily have anything to do with whether the vessel is registered with the flag state. Because a claim of both nationality and registry can be made by things that reflect only a vessel's nationality, it appears that Congress uses those words interchangeably.

Now onto the U.S. Secretary of State's certifications. The MDLEA says that they are conclusive proof of a flag state's response to a claim of registry under §§ 70502(d)(1)(A) and (C). § 70502(d)(2). That they are conclusive proof means that they "overbear any other evidence to the contrary." *United States v. Mitchell-Hunter*, 663 F.3d 45, 50 n.5 (1st Cir. 2011) (quoting BLACK'S LAW DICTIONARY 636 (9th ed. 2009)). And, as a general matter, they are "relevant and admissible prima facie evidence of statelessness." *Id.* at 50.

Mr. Ceballo complains that we are asked to "blindly rely" on these certifications. Docket No. 100, pg. 10. He wants to know what the government told the Dominican Republic about the vessel, how the Dominican Republic determined that the vessel did not have its nationality, and whether the Dominican Republic has a "verifiable log of all [its] ships." Docket No. 100, pg. 10. He even says that treating the certifications as conclusive evidence of the claimed flag state's response violates the separation of powers. *Id.* at 11. But he fails to develop this two-sentence, citationless argument. In any event, it is unavailing.

Under separation of powers principles, we would be out of line if we disregarded Congress's decision to treat the U.S. State Department's certifications as conclusive proof of the claimed flag state's response. "[M]atters relating 'to the conduct of foreign relations . . . are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference.'" *Hernández v. Mesa*, 140 S. Ct. 735, 744 (2020) (quoting *Haig v. Agee*, 453 U.S. 280, 292 (1981)). Courts are reluctant to wade into these issues "unless Congress specifically has provided otherwise." *Id.* (quoting *Dep't of Navy v. Egan*, 484 U.S. 518, 530 (1988)); *see also Estados Unidos Mexicanos v. DeCoster*, 229 F.3d 332, 340 (1st Cir. 2000) ("This division of power should give courts pause before entering this arena [of foreign affairs], absent guidance from th[e] other two branches."). Whether a vessel is flagged in a foreign state has important consequences under international law. Under the flag-state system, nations generally cannot interfere with vessels that have another's nationality. *United States v. Aybar-Ulloa*, 987 F.3d 1, 5 (1st Cir. 2021) (en banc) (quoting Richard A. Barnes, *"Flag States," in* THE OXFORD

HANDBOOK ON THE LAW OF THE SEA 313 (Rothwell et al. eds. 2015)). But if a vessel has no nationality, it is stateless and therefore "susceptible to the jurisdiction of any [nation]." *Id.* at 6 (quoting Barnes, *supra*, at 314). This flag-state system is "[o]ne of the most important means by which public order is maintained at sea." *Id.* (quoting R.R. CHURCHILL & A.V. LOWE, THE LAW OF THE SEA 205 (1988)).

Reaching out to a claimed flag state to learn whether a vessel has its nationality is one of the ways that the government honors the flag-state system. It is built into the MDLEA for a reason: It helps "maintain comity between nations." *Mitchell-Hunter*, 663 F.3d at 51. And Congress has expressly told us that the U.S. State Department's certification is conclusive proof of a claimed flag state's response, at least under §§ 70502(d)(1)(A) and (C). That is a loud and clear instruction not to look behind these certifications, which are the product of the Executive Branch's communications with foreign nations. *See United States v. Cardales-Luna*, 632 F.3d 731, 737 (1st Cir. 2011) (stating that Congress "effectively foreclosed th[e] possibility" of "look[ing] behind the State

Department's certification to challenge its representations and factual underpinnings" when it amended the MDLEA in 1996). In sum, Congress says that the certifications are conclusive proof of a claimed nation's response under §§ 70502(d)(1)(A) and (C), so they are.

One final point about the certifications. It does not matter that the government reached out to the Dominican Republic again (after the First Circuit published *Dávila-Reyes*), received a different response, and now relies on that response. "Jurisdiction under the MDLEA may be established at any time prior to trial." *Mitchell-Hunter*, 663 F.3d at 50 n.7. And the claimed flag state's response relates back to U.S. conduct that occurred before it*. See, e.g., id.* at 50 (using a U.S. State Department certification that was submitted nearly a year after the defendant's arrest as evidence for the jurisdictional determination); *United States v. Cardales*, 168 F.3d 548, 551–52 (1st Cir. 1999) (affirming U.S. jurisdiction where the claimed flag state consented after the vessel had already been boarded); *cf. United States v. Greer*, 285 F.3d 158, 175–76 (2d Cir. 2000) ("[W]e are persuaded by the fact that several of our

sister circuits [including the First, Ninth, and Eleventh Circuits] have found that consent under the MDLEA can relate back to activity that occurred before consent."). So there is nothing wrong with "basing jurisdiction on a certificate that was created after boarding and arrest but prior to trial." *Mitchell-Hunter*, 663 F.3d at 50 n.7.

With those initial statutory skirmishes out of the way, we turn to whether the government has shown, by a preponderance of the evidence, that there is jurisdiction over the defendants' vessel. If the MDLEA uses registry and nationality interchangeably, there is jurisdiction over the vessel under § 70502(d)(1)(A). And if it does not, there is jurisdiction under § 70502(d)'s residual category.

Section 70502(d)(1)(A) applies where a vessel makes a claim of registry and the claimed flag state denies the claim. That is what happened here. Two people aboard the defendants' vessel made a claim of Dominican nationality for the vessel, and the U.S. Secretary of State's second certification conclusively proves that the Dominican Republic denied that the vessel is registered there or has its nationality.

Thus, if the statutory terms "registry" and "nationality" are used interchangeably, the defendants' vessel is subject to U.S. jurisdiction under § 70502(d)(1)(A).

   If registry and nationality have different meanings, such that § 70502(d)(1)(A) does not encompass the vessel's claim of nationality, the vessel is subject to U.S. jurisdiction under § 70502(d) because it is stateless. Under international law, a vessel is stateless when it is not authorized to fly the flag of any nation. *See Aybar-Ulloa*, 987 F.3d at 5. Returning to the flag-state system, every vessel must sail under the flag of one nation. *Id.* A vessel claims a nationality by flying its nation's flag, carrying papers that show its nationality, or making an oral claim of nationality. *Matos-Luchi*, 627 F.3d at 5. To enjoy the protections of the flag-state system, the vessel needs to "bear[ ] the insignia or papers of a national vessel or its master [must be] prepared to make an affirmative and sustainable claim of nationality." *Id.* If it does neither, it is stateless under international law. And if it is stateless, any nation has "the authority to interdict and exercise physical control over" it. *Aybar-Ulloa*, 987 F.3d at 6. Here, the vessel

bears no indicia of nationality, flies no nation's flag, and its claimed flag state denies that it is registered there or has its nationality. Thus, the vessel is stateless under international law, without nationality under § 70502(d), and subject to U.S. jurisdiction.

Exercising jurisdiction over the vessel under § 70502(d)(1) and § 70502(d)'s residual category is consistent with international law for another reason, too. The "'protective principle' of international law" allows a nation "to assert jurisdiction over a person whose conduct outside the nation's territory threatens the nation's security." *Cardales*, 168 F.3d at 553 (quoting *United States v. Robinson*, 843 F.2d 1, 3 (1st Cir. 1988) (Breyer, J.)). In the MDLEA, Congress found that drug trafficking aboard vessels "presents a specific threat to the security and societal well-being of the United States." § 70501. So applying the MDLEA to people who engage in drug trafficking aboard vessels is consistent with the protective principle. *Cardales*, 168 F.3d at 553. Though *Aybar-*

*Ulloa*[3] noted correctly that *Cardales* "can be read as applying only to the circumstance where a foreign flag nation consents to the application of United States law to persons found on that nation's flagged vessel," 987 F.3d at 2, the First Circuit has upheld jurisdiction under the protective principle in a fact pattern where no other nation consented to the application of U.S. law. In *United States v. Bravo*, 489 F.3d 1 (1st Cir. 2007), the First Circuit held that applying U.S. law to a vessel where its claimed flag state could neither confirm nor deny its claim of registry is consistent with international law under the protective principle. *Id.* at 7–8. These cases remain good law. Together they stand for the proposition that, under international law's protective principle, the United States may exercise jurisdiction over a foreign vessel with its claimed flag state's consent and a stateless vessel where its occupants are engaged in drug trafficking because Congress has found that this conduct poses a national-security threat to the United

---

3. *Aybar-Ulloa* did not undermine the First Circuit's protective principle jurisprudence. It declined to rely on those cases because it did not have to. 987 F.3d at 3 ("We also need not and do not rely on the protective principle, leaving its potential application for another day.").

States. Exercising jurisdiction over the defendants' vessel is therefore consistent with international law under the protective principle as well.

The defendants argue next that Congress exceeded its Article I authority under the Define and Punish Clause when it enacted § 70502(d) because that section's definition of statelessness is broader than international law's, which they view as limiting Congress's power under that clause. Thus, they say, § 70502(d) is unconstitutional. There is no need to wade into whether international law limits Congress's authority under the Define and Punish Clause. For, as we have explained, exercising jurisdiction over the defendants' vessel is consistent with international law. They lack standing to challenge § 70502(d) as it applies in other cases. *See United States v. Ackell*, 907 F.3d 67, 71 (1st Cir. 2018) ("The traditional rule is that a person to whom a statute may constitutionally be applied may not challenge that statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the Court." (quoting *United States v. Sayer*, 748 F.3d 425, 434–35 (1st Cir. 2014))).

## B.

The defendants raise a laundry list of Due Process challenges as well.[4] The first is that §§ 70502(d)(1)(A) and (C) are unconstitutionally vague. Because § 70502(d)(1)(C) is not at issue, we limit our analysis to § 70502(d)(1)(A). A criminal law is unconstitutionally vague if it "fails to give ordinary people fair notice of the conduct it punishes, or [is] so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015) (citing *Kolender v. Lawson*, 461 U.S. 352, 357–58 (1983)). For shorthand, we call these two aspects of vagueness doctrine notice and arbitrary enforcement.

Mr. Ceballo insists that § 70502(d)(1)(A) is like the law that the Supreme Court struck down in *Kolender*. But *Kolender* does not help him. California enacted a criminal statute that

---

4. Mr. Lantigua-Nuñez does not develop any of his challenges, *see* Docket No. 96, pg.1, so we disregard them. *See United States v. Hernández-Román*, 981 F.3d 138, 146–47 (1st Cir. 2020) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990))).

"require[d] persons who loiter or wander on the streets to provide a 'credible and reliable' identification . . . when requested by a peace officer under circumstances that would justify a [*Terry*] stop." *Kolender*, 461 U.S. at 353. As to notice, *Kolender* explained that a law must "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited." *Id.* at 357. And as to arbitrary enforcement, the law must "establish minimal guidelines to govern law enforcement." *Id.* at 358. This requirement prohibits laws that have such a "standardless sweep" that "policemen, prosecutors, and juries [can] pursue their personal predilections." *Id.* at 358. *Kolender* struck down the California law because, "by failing to describe with sufficient particularity what a suspect must do" to provide "credible and reliable identification," it "vest[ed] virtually complete discretion in the hands of the police to determine whether" a person had complied with it. *Id.* at 358, 361.

Mr. Ceballo argues that § 70502(d)(1)(A) is unconstitutionally vague because it does not "provide enough notice on how to satisfy [its] demands" and "invite[s]

arbitrary enforcement" by failing to "provide people navigating the high seas" notice of "whether [and by whom] their ships can be interdicted" and failing to make clear "how the government can reject a defendant's claim of nationality for the vessel." Docket No. 100, pgs. 13–14. He claims that § 70502(d)(1)(A) suffers from the same infirmity as the California law in *Kolender*: That law failed to explain how someone could prove their identity, and this one fails to explain what process the government must use to reject a vessel's claim of nationality. Docket No. 100, pgs. 14–15. This analogy does not work.

The problem with the law in *Kolender* was that the police had unbridled discretion to determine whether someone violated it. Because the law did not include any standards as to what constituted credible and reliable identification, whether someone satisfied it was up to the whim of the police officer. Section 70502(d)(1)(A), in contrast, leaves no room for discretion about whether it is satisfied. It is satisfied, and thus the United States can exercise jurisdiction under it, if the vessel makes a claim of registry

that the claimed flag state denies. There is no wiggle room about what response the government needs from the claimed flag state to exercise jurisdiction under § 70502(d)(1)(A).

Mr. Ceballo argues next that, because the MDLEA does not set forth how the government may inquire into a claim of registry and then disregard it, he lacked notice that the United States could interdict the vessel. Docket No. 100, pg. 14. This argument, and the prior one, appear to be additional attempts to look behind the U.S. Secretary of State's certifications. Draping them in the garb of a due-process challenge does not change the outcome. The arguments run headfirst into *Aybar-Ulloa*. Because the vessel is stateless as a matter of international law, any nation could interdict it. *Aybar-Ulloa*, 987 F.3d at 6. Thus, he had perfectly adequate legal notice that the United States could interdict his vessel.

His next argument runs headfirst into First Circuit caselaw as well. He argues that prosecuting him under the MDLEA violates due process because there is no nexus linking his alleged criminal conduct to the United States. Docket No. 100, pgs. 17–18. That is, the government has not

shown that the drugs transported on the vessel would affect the United States. Due process is satisfied if applying the MDLEA to him would not be arbitrary or fundamentally unfair. *Cardales*, 168 F.3d at 553. International law principles guide this inquiry. *Id.* And, under international law, there is nothing unfair or arbitrary about prosecuting people aboard a stateless vessel for drug trafficking. As the First Circuit put it in *Aybar-Ulloa*, "if a person intent on drug trafficking on the high seas wants to be prosecuted in his own country should he be caught, he should sail under that country's flag." 987 F.3d at 9. A stateless vessel is an international pariah that sails without the protections of any nation. *See id.* at 6. And nearly all nations view drug trafficking as a serious crime. *See U.N. Convention Against Illicit Traffic in Narcotic Drugs and Psychotropic Substances*, U.N. TREATY COLLECTION, https://treaties.un.org/Pages/ViewDetails.aspx?src=IND&mt dsg_no=VI-19&chapter=6&clang=_en (last accessed Oct. 25, 2022) (noting that 191 nations, including the Dominican Republic, are a party to this agreement). So it's not unfair or arbitrary for any nation to exercise jurisdiction over drug-

trafficking crimes committed aboard a stateless vessel. *Cf.* *United States v. Klintock*, 18 U.S. (5 Wheat.) 144, 152 (1820) (stating that crimes committed by people on a "vessel not at the time belonging to the subjects of any foreign power, but in possession of a crew acting in defiance of all law, and acknowledging obedience to no government whatever, . . . is punishable in the Courts of the United States"). The defendants claim that the First Circuit "has yet to address the due process nexus requirement as applied to individuals on a vessel without a flag or where there is no flag-nation consent." Docket No. 100, pg. 17. That is incorrect. In *Bravo*, the First Circuit rejected the defendants' argument that the government was required to prove a jurisdictional nexus where Colombia, their claimed nation, had neither confirmed nor denied their claim that their vessel, which flew no flag, was Colombian. 489 F.3d at 4, 7. Because the vessel here is stateless, the government need not show any nexus to the United States to prosecute him for his conduct aboard it.

## II.

In sum, the Court **DENIES** the defendants' motions to dismiss (Docket Nos. 96, 100) and **FINDS** that the government has proved by a preponderance of the evidence that it may exercise U.S. jurisdiction over the defendants' vessel under § 70502(d)(1)(A) and § 70502(d)(1)'s residual category.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 31st day of October 2022.

S/ SILVIA CARREÑO-COLL
UNITED STATES DISTRICT COURT JUDGE